IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| HERAEUS ELECTRO-NITE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIDWEST INSTRUMENT COMPANY, INC. | : | NO. 06-355 |


## <u>MEMORANDUM</u>

**Padova, J.**                                          **October 18, 2006**


On January 26, 2006, Plaintiff Heraeus Electro-Nite Co., ("HEN") brought this suit alleging patent infringement against Midwest Instrument Company, Inc. ("Minco"). Minco filed its amended answer and counterclaim on August 30, 2006, asking that the Court declare that the patent at issue, No. 4,964,736 ("the '736 Patent") is invalid, inter alia, due to inequitable conduct before the Patent and Trademark Office ("PTO"). Presently before the Court is a motion by HEN to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). Also before the Court are two motions by Minco to compel discovery. For the reasons that follow, the motions to compel will be denied and the motion to dismiss the counterclaim will be granted in part, with leave to file an amended pleading to cure the defect we perceive.

HEN's complaint alleges that the '736 Patent describes a temperature measuring device for use in molten metals. (Complaint ¶ 6.) Minco has allegedly infringed the patent by selling its own

product that incorporates the claimed features of the '736 Patent, including molten metal immersion probes. (Complaint ¶ 10.) Minco denies that it has infringed the patent (Amended Answer and Counterclaim at ¶ 14) and asserts that the patent is unenforceable because of HEN's inequitable conduct before the PTO. More specifically, it contends that Plaintiff failed to disclose in the prosecution of its application certain prior art references, including its own commercial practices, and art cited in a corresponding Japanese patent application during the pendency of the U.S. application. (Id. at ¶ 20.)[1] Minco asserts that, as part of HEN's attempt to patent the invention in Japan, the Japanese examiner rejected the application on the basis of the prior art reference, and, therefore, HEN must have recognized the materiality of the Japanese prior art to the U.S. application. (Id.) It asserts that the U.S. patent is invalid because HEN breached its duty of candor with respect to the U.S. examiner by not disclosing the prior art, and by failing to correct specific statements that turned out to be untrue. (Id.)[2]

Minco also asserts inequitable conduct in HEN's prosecution of a reexamination application,

---

[1]Minco asserts that:
> Heraeus expressly and repeatedly stated to the PTO examiner that none of the referenced prior art would suggest to a person of skill in the art to adopt a taper design of the sort disclosed in the '736 patent. However, while the application resulting in the '736 patent was still pending before [the PTO], the Japanese patent examiner in the corresponding Japanese application cited, among other references, Japanese Utility Model Application No. SHO 56-65460 as disclosing a probe for measuring the oxygen content in molten metal having a tapered refractory sheath that narrows toward the tip of the probe on which a temperature-sensing element and oxygen sensing cell are mounted.

(Amended Answer and Counterclaims at ¶ 20.)

[2]Minco also asserts counterclaims based on anticipation by prior art, obviousness, failure to provide a full, clear, concise and exact written description of the invention, failure to set forth best mode, and failure to distinctly claim the subject matter of the patent. (Amended Answer and Counterclaim at ¶ 11.)

during which it (1) again failed to inform the PTO of the same prior art; and (2) failed to inform the PTO that it had (a) asserted a claim of infringement against its competitor Leeds & Northrup ("L&N") and (b) L&N also responded to the claim by asserting HEN's inequitable conduct in failing to cite the Japanese prior art in the original application.  (Id. at 22.)

Minco's Motions to Compel.

Because Minco asserts that the absent discovery has a direct bearing on the dispositive motion, we address the discovery issues first.  Minco asserts that it sought discovery related to its patent defenses, including foreign patent documents, from HEN, but that the plaintiff has failed to provide the discovery on the ground that it does not control the third parties that allegedly have the information.  The third parties are Heraeus Electro-Nite International N.V. of Belgium ("HEN Belgium"), and Heraeus Holding GmbH ("HH"), a privately held German company.  Minco asserts that HH is the parent entity of HEN and HEN Belgium, that HEN Belgium or HH control the related companies' worldwide patent filings, direct all patent litigation, and that they likely had knowledge of the Japanese prior art, and the claim of L&N.

In response to Minco's interrogatories, HEN responded that it objected thereto "to the extent that they seek information and documents that belong solely to third parties that are not within Plaintiff's possession, custody, or control."  (HEN's Response at General Objection 7.)  HEN also objected to Minco's definition of what entities were included within the scope of the discovery request to the extent that it imposed "an obligation on Plaintiff to obtain information and/or documents that are in the possession, custody or control of entities or person other than the U.S.

company Heraeus Electro-Nite Co." (HEN's Response at General Objection 12.)[3]  Minco's counsel

asserts that he made a good faith effort to obtain the discovery by requesting that HEN waive its

objections, but that HEN has refused.  (Certification of William Schramm.)  Minco makes no

assertion that it attempted to get the information directly from HEN Belgium or HH through third

party discovery under Fed. R. Civ. P. 34(c) and 45.

In Gerling Intern. Ins. Co. v. C.I.R., 839 F.2d 131, 140-41 (3d Cir. 1988), the Third Circuit

set out the test for when a party to the litigation can be held accountable for failing to produce

discovery in the possession of a non-party.  The test focuses on the relationship between the two

entities.  In the absence of control by the litigating corporation over documents in the physical

possession of another corporation, the litigating corporation has no duty to produce the discovery,

id., and the location of the documents, whether within the territorial jurisdiction of the court or not,

is irrelevant.  Marc Rich & Co., A.G. v. United States, 707 F.2d 663, 667 (2d Cir.1983).  Where the

litigating corporation is the parent of the corporation possessing the records, courts have found the

requisite control where "a subsidiary corporation acts as a direct instrumentality of and in direct

cooperation with its parent corporation, and where the properties and affairs of the two [were] . . .

inextricably confused as to a particular transaction," Gerling at 140 (quoting Acme Precision

Products, Inc. v. American Alloys Corp., 422 F.2d 1395, 1398 (8th Cir.1970)).  The requisite control

may also be found where the parent had the power to elect a majority of the board of directors of the

_____

[3]We note that, nonetheless, in its own requests for production of documents, HEN included
the following definition:
> "Plaintiff" and "Electro-Nite" shall mean Heraeus Electro-Nite Co., and its
> predecessors, parents, subsidiaries, . . . and each person acting on its or their behalf
> or under its or their control.

(Boyle Declaration Exhibit A.)

subsidiary.  Gerling at 140 (citing In re Uranium Antitrust Litig., 480 F.Supp. 1138, 1152 (N.D. Ill. 1979).

Where the litigating corporation is the subsidiary and the parent possesses the records, control has been found to exist where the "alter ego" doctrine warranted piercing the corporate veil.  Gerling at 140, (citing In re Uranium Antitrust Litig. at 1152-53 litigating subsidiary held responsible for documents possessed by Canadian parent where evidence established that the two "operated as a single functional unit in all aspects of their uranium business" and "have shared an interlocking structure of corporate directors, officers, and executive and administrative personnel who have managed the uranium-related activities of both corporations" and Advance Labor Service, Inc. v. Hartford Accident & Indem. Co., 60 F.R.D. 632, 634 (D.C. Ill.1973) veil-piercing where two corporations had identical stockholders and directors).  Control has also been found where the subsidiary was an agent of the parent in the transaction giving rise to the suit and in litigating the suit on the parent's behalf. Gerling at 140-41(citing Afros S.P.A. v. Krauss-Maffei Corp. 113 F.R.D. 127 (D. Del.1986) litigating subsidiary held to have the requisite control over documents held by the parent where the subsidiary was the exclusive seller of its parent's products in the United States).  Thus, where the agent-subsidiary "can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." Gerling at 141.  Where sister corporations are under common control, the same rules as with the cases involving a litigating subsidiary apply.  The requisite control has been found only where the sister corporation was found to be the alter ego of the litigating entity, or where the litigating corporation had acted with its sister in effecting the transaction giving rise to suit and is litigating on its behalf.  Id.

HEN is the subsidiary of HH and the sister of HEN Belgium.  Accordingly, for HEN to be responsible to produce documents possessed by these entities, it must be shown to be their alter ego or agent.  The exhibits to Minco's motion, while showing that these entities are unquestionably related, fails to show that they are alter egos or agents.  According to its web site, HH "unites six companies," in the "Heraeus Group."  (See www.heraeus.com/hh/eng/holding_home.nsf, Motion to Compel, Exhibit 1.)  It has numerous subsidiaries throughout the world.  (Id. at Ex. 3, 4.)  HH has a "supervising board of directors," a "board of management," and a "board of its executive board managing companies."  The only individual who is listed as a director of HH as well as a HEN subsidiary is Taco Gerbranda, the chief executive officer of HEN Belgium who, presumably because of that position, also serves on the board of executive board managing companies.  (Id. at Ex. 8.) Beyond this evidence, Minco offers the facts that (1) the HEN and HH websites are linked; (2) that a person wishing to contact HEN through its website is directed to HEN Belgium (id. at Ex. 5); (3) a press release that states that the individual responsible for operations in the United States, Canada and Mexico, and another who is responsible for operations in Japan, Taiwan and China, both report to the chairman of HEN Belgium (id. at Ex. 6); and (4) a mass-mailed letter announcing that HH was consolidating two companies, HEN and L&N[4], into a single unit (id. at Ex. 7).

Although Minco claims that information in the hands of HEN Belgium or HH is likely to be relevant to issues involved in the counterclaim, it makes no showing that the companies operated as a single functional unit, had identical stockholders and directors, or that HEN used the documents to meet its own business needs.  Accordingly, HEN's objections to the discovery requests were

_____

[4]Although it is not entirely clear from the exhibits, we infer that at some point after their patent infringement dispute, L&N was acquired by one of the HEN entities.

proper and the motions to compel production must be denied.

HEN's Motion to Dismiss the Counterclaim.

Inequitable conduct constitutes an equitable defense to a claim of patent infringement. Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1255-56 (Fed. Cir. 1997); see also 35 U.S.C. § 282(1). "Inequitable conduct occurs when a patentee breaches his or her duty to the PTO of 'candor, good faith, and honesty.'" Warner-Lambert Co. v. Teva Pharms. USA, Inc., 418 F.3d 1326, 1342 (Fed. Cir.2005) (quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir.1995)). Inequitable conduct consists of an "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Refac Intern., LTD v. Lotus Dev. Corp., 81 F.3d 1576, 1581 (Fed. Cir. 1996); Warner-Lambert Co. at 1342; Pharmacia Corp. v. Par Pharm., Inc., 417 F.3d 1369, 1373 (Fed. Cir.2005). "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." Molins, 48 F.3d at 1179.[5]

"The inequitable conduct analysis is performed in two steps comprising 'first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to

_____

[5]Courts have been cautioned to examine claims of inequitable conduct with care, and the Federal Circuit has been critical of "the habit of charging inequitable conduct in almost every major patent case," describing it as having "becom[e] an absolute plague." Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir.1988). See also FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411, 1415 (Fed. Cir.1987) (holding that "'[i]nequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee").

determine whether the applicant's conduct is so culpable that the patent should be held unenforceable.' " Ferring B.V. v. Barr Laboratories, Inc., 437 F.3d 1181, 1186 (Fed. Cir. 2003) (quoting Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362-63 (Fed. Cir.2003) and Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1366 (Fed. Cir.2001)).  "One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." Molins, 48 F.3d at 1178.

At the pleading stage, many courts have held that claims of inequitable conduct must be pleaded with particularity and are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  See, e.g. EMC Corp. v. Storage Technology Corp. 921 F.Supp. 1261, 1263 (D. Del. 1996); Resqnet.com, Inc. v. Lansa, Inc., No. 01 CV 3578, 2004 WL 1627170, at *14 (S.D.N.Y. July 21, 2004) (citing Agere Sys. Guardian Corp. v. Proxim, Inc., 190 F.Supp.2d 726, 733-34 (D. Del.2000); Rentrop v. Spectranetics Corp., No. 04 CV 101, 2004 WL 1243608, at *1-2 (S.D.N.Y. June 4, 2004)).  Although the Federal Circuit has not stated specifically whether it will require pleadings of inequitable conduct to conform to Rule 9(b), it has noted in dicta that inequitable conduct "must be pled with particularity." Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir.2003).  Courts that have held claimants to the strictures of Rule 9(b) have also stated that pleadings that disclose the name of the relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b).  EMC Corp. 921 F.Supp. at 1263 (D. Del. 1996) (disclosure of prior art patent fulfills pleading requirements of 9(b); Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co., 820 F.Supp. 150, 154 (D.Del.1992) (same);

Mars Inc. v. JCM American Corp., No. 05-3165, 2006 WL 1704469 (D. N.J. June 14, 2006) (collecting cases).

We find that certain of Minco's allegations satisfy the pleading requirements, but others do not.  Minco contends that HEN failed to disclose to the U.S. PTO the prior art cited in the Japanese application, which caused that application to be rejected by the Japanese examiner.  Because that art caused the rejection of the corresponding patent, we find that Minco has sufficiently pled its materiality to the '736 patent.  Minco alleges that HEN expressly and repeatedly stated to the PTO examiner that none of the referenced prior art would suggest to a person of skill in the art to adopt a taper design of the sort disclosed in the '736 patent, while at the same time it allegedly had knowledge that the Japanese patent examiner in the corresponding Japanese application cited, among other references, Japanese Utility Model Application N. SHO 56-65460 as disclosing a probe for measuring the oxygen content in molten metal having a tapered refractory sheath that narrows toward the tip of the probe on which a temperature-sensing element and oxygen sensing cell are mounted.  As Minco has disclosed the name of the relevant prior art and disclosed the acts of the alleged fraud, it has fulfilled the requirements of Rule 9(b) vis-a-vis the assertion of inequitable conduct based on the failure to disclose prior art references to the PTO.  For the same reason, Minco has also sufficiently pled that HEN intended to deceive the PTO by failing to disclose the prior Japanese art because HEN had knowledge that that art allegedly caused the Japanese examiner to reject the corresponding application.

In regards to the claim of inequitable conduct in HEN's prosecution of the reexamination application, Minco alleges that HEN (1) again failed to inform the PTO of the same prior art; and (2) failed to inform the PTO that L&N had asserted inequitable conduct in HEN's failure to cite the

Japanese prior art in the original application, in response to an earlier infringement allegation. The "same prior art" allegation, vis-a-vis the reexamination application, sufficiently pleads materiality, intent to deceive, and the requirements of Rule 9(b) for the reasons just stated in regard to the original application. We find the derivative inequitable conduct claim involving the L&N allegation is also material since it too asserted HEN's inequitable conduct in regard to the '736 patent arising from the failure to cite the Japanese prior art.[6] In addition, Minco sufficiently alleges HEN's intent

_____

[6]HEN argues that the L&N charge cannot form the basis of a claim for inequitable conduct because such a claim can *only* arise if an assertion of infringement results in litigation that is not disclosed to the PTO. Memorandum of Law in Support of HEN's Motion to Dismiss Counterclaims at 10. We reject this argument. First, inequitable conduct before the PTO is a defense to an infringement claim. It would not be reasonable for a second party challenging patentability on inequitable conduct grounds to have to depend on the patent holder bringing an actual infringement suit against the first party that challenged patentability, before the patent holder's inequitable conduct of hiding the first claim before the PTO can become material.

Second, under the patent regulations, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose [] *all* information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a) (emphasis added). HEN's argument fails to address why knowledge of an allegation of inequitable conduct that, while material, has not resulted in actual litigation, fails to qualify as "all information."

Third, the cases HEN cites for its proposition that only actual litigation can form the basis of an inequitable conduct claim do not support it. In Critikon, Inc. v. Becton Dickinson Vascular Access, 120 F.3d 1253 (Fed. Cir. 1997), the Federal Circuit held that Becton Dickinson's argument – that the district court's failure to find intent was contrary to the weight of the evidence – was correct because the prior art patent was material to patentability and Critikon should have disclosed it to the PTO. The Court then added:

"But, more importantly, during the reissue proceedings, Critikon should have disclosed that the [patent in suit] was concurrently involved in the present litigation and that claims of invalidity and inequitable conduct were asserted against the patent. Failure to disclose the [prior art] patent and the fact that the [patent in suit] was in litigation was done with an intent to mislead or deceive and rises to the level of inequitable conduct."

Id. at 1255. Nothing in the Federal Circuit's discussion *limits* the basis for claims of inequitable conduct to claims actually in litigation. Rather, under 37 C.F.R. § 1.56(a) and the law of the Federal Circuit, it is the materiality of the conduct before the PTO, not whether that conduct led to litigation, that forms the basis of an inequitable conduct defense. Accord ICU Medical, Inc. v. B. Braun Medical, Inc., No. 01-3202, 2005 WL 588341 at *13 (N.D. Cal. Mar. 15, 2005) (court's holding that

-10-

to deceive the PTO in regards to the L&N allegation since it asserts that L&N's allegation of inequitable conduct arose from the same set of circumstances as its own claim.

However, Minco's alternate assertion of inequitable conduct, based on HEN's "own commercial practices" is insufficient. While one may assume this is a reference to either HEN's or its related companies' foreign patent prosecutions, the counterclaim does not so state this as an averment. There is simply no basis to place HEN on notice of the precise misconduct alleged by this term because the invocation of HEN's "commercial practices" as a basis for inequitable conduct before the PTO is simply too vague, and does not specifically inform HEN of its acts of alleged fraud. Accordingly, the affirmative defense of inequitable conduct based on HEN's own commercial practices will be dismissed with leave to file an amended counterclaim to cure the defect.[7]

Finally, Minco's amended counterclaims allege that the '736 patent is additionally unenforceable due to HEN's "inequitable conduct in failing to disclose the best mode of practicing the invention as contemplated by the inventor." (Amended Answer and Counterclaims at ¶ 22). As a consequence of the intentional concealment of best mode, Minco contends, the patent was fraudulently procured, rendering all of the claims of the patent unenforceable. (Id.)

HEN argues that this inequitable conduct claim also must be dismissed because it is little

---

the existence of ongoing litigation was material to the prosecution of the patent in suit did not specifically limit the basis for inequitable conduct defense to actual ongoing litigation); Nisus Corp. v. Perma-Chink Sys., Inc., 421 F.Supp.2d 1084, 1104 (E.D. Tenn. 2006) (finding that related litigation was per se material did not specifically limit the basis for inequitable conduct defense to the failure to disclose actual related litigation).

[7]Minco has also filed a motion in the alternative for leave to amend its counterclaim. We shall grant this motion and permit Minco to file an amendment, if it is able to do so within the confines of Fed. R. Civ. P. 11, to attempt to state with adequate specificity the commercial practices upon which it bases its assertion of inequitable conduct.

more than a legal conclusion, unaccompanied by any specific allegation regarding what Minco believes the best mode was or what representations HEN allegedly made to the PTO that concealed the best mode of practicing the invention.  (Memorandum of Law in Support of HEN's Motion to Dismiss at 8-9.)  In response, Minco argues that the '736 patent is directed to a probe especially designed for measuring the oxygen content of molten steel, and several of its claims expressly recite an "electro-chemical cell" oxygen sensor.  However, Minco continues, the only explanation of what an oxygen sensor is is that it is a "solid electrolyte."  (Complaint Exhibit 1, col. 1, line 51; col. 2, line 37.)  Minco argues the patent is totally devoid of any discussion of what a "solid electrolyte" or "solid electro-chemical cell" is, which Minco believes, was a conscious effort on HEN's part to not disclose the details of the oxygen cell to the patent examiner.  (Minco's Response to HEN's Motion to Dismiss at 10.)[8]

We find the best mode theory of inequitable conduct, as pled, also fails to satisfy Rule 9(b).  First, none of the assertions contained in Minco's Response concerning solid electrolytes are pled in the amended counterclaims.  Even if they were, they would be insufficient to satisfy an inequitable conduct claim based on best mode because the allegations do not specifically inform HEN of its acts of alleged inequitable conduct. The best mode defense has two prongs: first, whether, at the time of filing the application, the inventor possessed a best mode for practicing the invention; second, if the inventor possessed a best mode, whether the written description disclosed the best mode such that

---

[8]Additionally, Minco asserts a direct claim of invalidity based on the '736 patent's failure to set forth the best mode contemplated by the inventor of carrying out the invention.  (Id. at ¶ 11(d)) Both parties in their moving papers focus upon the best mode issue as an additional specie of inequitable conduct, rather than the separate affirmative defense pled in the amended counterclaims. Accordingly, we focus our discussion on the alleged failure to disclose, rather than whether Minco has pled the elements of a best mode defense.

one reasonably skilled in the art could practice it.  See Chemcast Corp. v. Arco Indus. Corp., 913

F.2d 923, 927-28 (Fed. Cir.1990).  Minco fails to make any specific allegation that HEN possessed

a best mode which was undisclosed, how it misrepresented that best mode, and what representations

HEN allegedly made to the PTO that concealed the actual best mode.  As with its "commercial

practices" claim, we shall permit Minco to file another amended counterclaim to cure these defects.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HERAEUS ELECTRO-NITE CO.      :        CIVIL ACTION
                                :
                                :
        v.                      :
                                :
                                :
MIDWEST INSTRUMENT COMPANY, INC. :        NO. 06-355


## ORDER

**AND NOW**, this 18th day of October, 2006, **IT IS HEREBY ORDERED** as follows:

1.  Plaintiff's Motion to Dismiss Defendant's Counterclaims for Inequitable Conduct
(Docket Entry # 25) is **GRANTED** insofar as it seeks dismissal of the inequitable
conduct counterclaim based upon

      (a) Plaintiff's "own commercial practices;" and

      (b) Plaintiff's failure to disclose best mode.

These claims are **DISMISSED** without prejudice.  The motion is **DENIED** in all
other respects.

2.  Defendant's Motion to Amend/Correct its Amended Answer and Counterclaim
(Docket Entry # 37) is **GRANTED**.  Defendant shall file its second amended answer
and counterclaim within twenty days.

3.  Defendant's Motion to Compel (Docket Entry 26) is **DENIED**.

4.  Defendant's Motion to Compel (Docket Entry 27) is **DENIED**.

5.  Defendant's Supplemental Motion to Compel (Docket Entry 34) is **DENIED**.

6.  Defendant's Motion for Leave to File Reply (Docket Entry 41) is **GRANTED**.

7.  Plaintiff's Motion for Leave to File Reply (Docket Entry 43) is **GRANTED**.

                        BY THE COURT:

                        /s/ John R. Padova

                        _____

                        John R. Padova, J.