IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERAEUS ELECTRO-NITE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MIDWEST INSTRUMENT | : | |
| COMPANY, INC. | : | NO. 06-355 |

### MEMORANDUM

Padova, J.                                                                                       November 14, 2007

      Plaintiff Heraeus Eletro-Nite Co. ("HEN") has brought this patent infringement action concerning U.S. Patent No. 4,964,736 ("the '736 patent"), entitled "Immersion Measuring Probe for Use in Molten Metals," against Midwest Instrument Company, Inc. ("Minco"). Currently before the Court is Minco's Motion for Summary Judgment to Limit Damages based on HEN's alleged failure to comply with 35 U.S.C. § 287(a) ("the Marking Statute"). Minco argues that HEN failed to comply with the Marking Statute's requirements of providing constructive notice of the alleged infringement because HEN did not mark its immersion probes with the patent number, and that it only received actual notice of the alleged infringement when this lawsuit was filed on January 26, 2006. Therefore, Minco contends that if HEN is successful in its claim of infringement, the damages HEN can recover should be limited, in accordance with the Marking Statute, to those acts of infringement that occurred after January 26, 2006. For the reasons that follow, the Motion is denied.

**I.      FACTUAL BACKGROUND**

      In this lawsuit, HEN claims that Minco infringes the '736 patent. The '736 patent covers immersion probes that are used for measuring the temperature and oxygen content of molten steel. (Conti Aff. ¶ 3.) To measure the oxygen and temperature content of molten steel, a probe is attached

to a lance and then immersed in the molten steel for less than 10 seconds. (Id. ¶ 4.) The immersion process burns and destroys the probe, and thus, after it is used one time, it is discarded. (Id.)

The probes at issue are used in steel mills by lower-level factory workers. (Id. ¶ 5.) They are shipped on a pallet in boxes, usually 20 per box. (Id. ¶ 5.) They are never sold or shipped individually or separately from their packaging. (Id. ¶ 11.) Typically, it takes less than a minute to ready a probe for immersion once it is removed from the box. (Id. ¶ 10.) HEN contends that the probes are stored by customers in their original packaging, which serves as a carrying-case, until the probes are ready to be used because they are tubular, susceptible to rolling, contain glass components, and can be in excess of six feet long. (Id. ¶ 12.) HEN maintains that the probes have a total life span outside their packaging of less than one minute. (Id. ¶ 10.) Minco, however, asserts that in many steel mills, the probes are removed from the packaging and stored in a barrel or other staging area. (Falk Decl. ¶ 2.) Minco also states that, often after a probe is used, the lance is prepared with another fresh probe to protect the lance, or in anticipation of the next test, which can occur immediately or after many hours. (Id.)

HEN has never marked any of its probes with patent information. (Minco SMF ¶ 7; HEN Resp. to Minco's SMF ¶ 7.) However, the printing on the outside of all boxes of HEN's probes clearly identifies the patent number, and HEN has used this means of marking its probes since the '736 patent was issued in October of 1990. (HEN Counter-SMF ¶ 10; Minco Reply to Counter-SMF ¶ 10.) HEN's practice of marking the outside of the box containing probes is consistent with common industry practice. (Conti Aff. ¶ 22.) In fact, Minco admits that it frequently marks patent information on the package of its own products and not on the products themselves. (Minco Reply to Counter-SMF ¶ 20.)

In the past, HEN has placed other information on some of its probes covered by the '736 patent. (Falk Decl. ¶¶ 4-7.) However, the majority of HEN's probes contained no markings whatsoever. (Conti Aff. ¶ 20.) The other information has included the HEN trade name, a four digit internal part code, a size identifier, a date code sticker, and an internal press date code. (Id. ¶ 21.)

## II.     STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In

evaluating the evidence, we take the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (3d Cir. 2003). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Technologies, Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).

**III.   DISCUSSION**

      Title 35, U.S.C. § 287(a) provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). Thus, the statute limits the amount of damages the patentee can recover in an infringement suit to those acts of infringement that occurred after the patentee gave the alleged infringer "notice of infringement." Gart v. Logitech, Inc., 254 F.3d 1334, 1345 (Fed. Cir. 2001). The purpose behind the Marking Statute is to provide notice to the public of the status of intellectual

property. Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 162 (1989). The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice of the alleged infringement. Id. "The purpose of the constructive notice provision is to give patentees the proper incentive to mark their products and thus place the world on notice of the existence of the patent." American Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1538 (Fed. Cir. 1993) (citation omitted). To comply with the requirement of constructive notice, a patentee must consistently mark substantially all of the patented products, and cease marketing unmarked products. Id. Compliance with § 287(a) is a question of fact, and the patentee bears the burden of proving compliance by a preponderance of the evidence. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996); see also Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998); Gart, 254 F.3d at 1339. Thus, Minco is entitled to summary judgment on this issue only if no reasonable jury could find that HEN has complied with the statute's notification requirements. See Gart, 254 F.3d at 1339.

Minco contends that HEN failed to comply with the Marking Statute because it never marked any of its probes with the patent number. Moreover, Minco maintains that, because HEN marked some of its probes with other information, HEN cannot satisfy the Marking Statute's requirements by marking the patent number on the probes' packaging. We disagree.

The Supreme Court has focused on whether the method of marking the patented product provided notice, rather than on the precise mechanistic compliance with the statute. See Sessions v. Romadka, 145 U.S. 29 (1892); see also Rutherford v. Trim-Tex, Inc., 803 F. Supp. 158, 161 (N.D. Ill. 1992) (discussing Sessions). In Sessions, a manufacturer of trunk clasps failed to mark the smallest size trunk clasp with the patent number, instead placing the patent number on the packaging.

Sessions, 145 U.S. at 50. The Court stated that it was not clear that the patent number could not have been placed on the smaller clasps. Id. However, it held that complying with the alternate provision, of affixing the patent number to the packaging, was sufficient because "in a doubtful case, something must be left to the judgment of the patentee." Id. Thus, the Court focused on the goal of providing notice and not on strict application of the statute. Subsequently, "[c]ourts have noted that a practical common sense approach must be taken when dealing with issues of compliance [with] the marking provisions of § 287, given that the purpose of the statute is to provide notice to the public of patent coverage." Metrologic Instruments, Inc. v. PSC, Inc., Civ. A. No. 99-4876, 2004 U.S. Dist. LEXIS 24949, at *59 (D.N.J. Dec. 13, 2004); see also Rutherford, 803 F. Supp. at 163 ("[O]ther jurisdictions generally apply a liberal construction of § 287 and do not severely scrutinize the character of the patented articles to determine whether the article was capable of being marked."). Courts consider the size and other physical properties of the patented article, as well as "defacement, custom of the trade, expense, and other reasonable factors" when determining whether alternative marking (i.e., marking a product's packaging) is sufficient. Rutherford, 803 F. Supp. at 163 (citations omitted).

Numerous courts have found that placing patent numbers on a product's packaging complies with the Marking Statute even in situations where it was plainly possible to have physically placed the patent number on the product itself. See Chicago Pneumatic Tool Co. v. Hughes Tool Co., 192 F.2d 620, 626 (10th Cir. 1951) (finding that patentee of a drill bit used for deep wells for oil and gas sufficiently complied with the Marking Statute by marking the containers in which the drill bits were marketed); Saf-Gard Prods., Inc. v. Service Parts, Inc., 491 F. Supp. 996, 1010 (D. Ariz. 1980) (concluding that patentee of a radiator cap complied with the Marking Statute by affixing the patent

number to the products' packages); Bergstrom v. Sears, Roebuck & Co., 496 F. Supp. 476, 494 n.9 (D. Minn. 1980) (finding that patentee of a fireplace grate gave constructive notice of the alleged infringement by marking the grate with a tag bearing the patent number).

In this case, HEN has presented evidence to support its contention that the physical properties and conditions of use of the probes make alternative marking pursuant to the Marking Statute reasonable. HEN has presented evidence that the probe exists outside of its packaging for only a brief period of time, that the probe is effectively destroyed during its use, and that it is discarded after being used one time. Additionally, HEN has provided evidence that users of the probes wear protective gear, including fire retardant clothing, face shields, and safety goggles, which are not conducive to allowing users to read the patent information were it to be marked on the probes themselves. (Conti Aff. ¶¶ 8-9.) Finally, HEN has presented evidence that the custom of this industry is to place the patent information on the packaging, and not the probes themselves. These factors create a genuine issue of material fact as to whether or not HEN has complied with the Marking Statute by using alternative marking.

Minco argues that alternative marking is insufficient in this case as a matter of law because HEN was able to mark its probes with other information. Minco further contends that the Court may not consider other reasonable factors to determine whether marking the product's packaging is sufficient unless there are no other markings on the patented device. Rutherford provides some support for this argument. The court in Rutherford noted that "[w]hen the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent marking on the package is not sufficient compliance with the statute." Rutherford, 803 F.

Supp. at 163.[1]  Additionally, in John L. Rie, Inc. v. Shelly Bros., Inc., 366 F. Supp. 84 (E.D. Pa. 1973), the court found that the patent marking on the package of a bag closure device did not comply with the Marking Statute as the device already had "PAT PEND" and plaintiff's name and address printed on it.  Id. at 90-91.  Finally, in Creative Pioneer Products Corp. v. K-Mart Corp., 5 U.S.P.Q.2d 1841 (S.D. Tex. 1987), the court found that the patent marking on a wire stripper tool's package was insufficient to comply with the statute because the tool had other lettering, including some patent information, embossed on its handle, and because placing patent markings on the product would have been a relatively simple matter.  Id. at 1847-48.

We are not persuaded that these opinions, none of which are binding on this court, create a strict rule of law that alternative marking cannot satisfy the Marking Statute where the patentee is able to place other information on the patented product itself.  In Bowling v. Hasbro, Inc., 490 F. Supp. 2d 262 (D.R.I. 2007), the court similarly refused to adopt such a strict rule of law.  Id. at 277.  Hasbro argued that, despite the extensive case law stating that patentees have some discretion in deciding whether to mark the patented product's packaging, strict compliance with the Marking Statue is required when the product has information other than the patent number printed on it.  Id. at 276-277.  The court noted that there was an absence of any authority directly on point, distinguished the same cases Minco relies on here, and concluded that summary judgment was not appropriate.  Id. at 277.

Although alternative marking may not have satisfied the Marking Statute in the cases relied

---

[1]The product at issue in Rutherford, a metal dry wall casing bead, did not have any markings on it at all.  The court held that the burden of adding a manufacturing step in order to place the patent marking on the product was an adequate justification for the patentee to mark the product's packaging, even though the product itself could have been marked.  Rutherford, 803 F. Supp. at 164.

upon by Minco, it appears that the patented products in those cases had significantly different characteristics than the probes in this case.  Most importantly, it does not appear that the products in those cases were destroyed upon use and/or disposable.  To the contrary, it seems apparent that the products in those cases were not disposable, but rather, would be used over and over again, long after the packaging had been discarded.  See Creative Pioneer Products, 5 U.S.P.Q.2d at 1845 (concerning patent for a wire stripper tool), John L. Rie, Inc. 366 F. Supp. at 85 (concerning patent for a bag closure device).

      In this case, there is evidence that the probes are used once, soon after they are removed from their packaging, and are destroyed by being immersed in molten steel.  There is also evidence that the users of the probes would not be able to read patent information were it marked on the probes themselves.  Given this record evidence, and the lack of controlling legal authority to support Minco's position, we cannot find as a matter of law that HEN failed to provide constructive notice of the alleged infringement pursuant to the Marking Statute merely because it marked the probes' packaging with the patent number while it marked other information on the probes themselves.  As noted above, we conclude that a reasonable jury could find, based on the evidence offered by HEN, that under the particular circumstances of the products at issue in this case, marking the probes' packaging complied with the Marking Statute.  For the foregoing reasons, Minco's Motion for Summary Judgment is denied.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERAEUS ELECTRO-NITE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MIDWEST INSTRUMENT COMPANY, INC. | : | NO. 06-355 |

### ORDER

**AND NOW**, this 14th day of November, 2007, upon consideration of Minco's "Motion for Summary Judgment Limiting Damages for Failure to Comply with 35 U.S.C. § 287(a), Failure to Mark" (Docket No. 136), and all papers filed in connection therewith, **IT IS HEREBY ORDERED** as follows:

1. Minco's Motion for Leave to File a Reply (Docket No. 144) is **GRANTED**.

2. HEN's Motion for Leave to File a Sur-Reply (Docket No. 145) is **GRANTED**.

3. Minco's Motion for Leave to File Reply to Plaintiff's Response and Counter-statement of Material Facts (Docket No. 148) is **GRANTED**.

4. Minco's Motion for Summary Judgment (Docket No. 136) is **DENIED**.

BY THE COURT:

s/ John R. Padova, J.
John R. Padova, J.